CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 1 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| RUSSELL DAVID WOOLDRIDGE, )<br><br>    **Plaintiff,** )<br><br>        )<br>v. )<br>        )<br>CAROLYN COLVIN,[1] )<br>**Acting Commissioner of Social Security,** )<br>        )<br>    **Defendant.** ) | Civil Action No. 7:13-cv-00053<br><br>**MEMORANDUM OPINION**<br><br>**By:**   **Judge James C. Turk**<br>       **Senior United States District Judge** |

Plaintiff Russell David Wooldridge ("Wooldridge") brought this action for review of Defendant Carolyn Colvin's ("the Commissioner") final decision denying his claims for disability insurance benefits ("DIB") under the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g). This Court has jurisdiction over the action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both Wooldridge and the Commissioner filed motions for Summary Judgment. ECF Nos. 10, 15. Oral argument was heard on October 25, 2013, and the motions are now ripe for disposition.

The ultimate issue before the Court is whether substantial evidence supports the Commissioner's final decision that Plaintiff can perform certain unskilled work and is therefore ineligible for DIB. Plaintiff claims that substantial evidence does not support the Commissioner's final decision because the Administrative Law Judge ("ALJ") posed an improper hypothetical to the vocational expert ("VE") at the administrative hearing. Plaintiff asserts that reliance on the VE's answer to the improper hypothetical caused the ALJ to improperly decide the case.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

For the reasons stated below, the Court finds that the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.   STANDARD OF REVIEW

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether they were reached through the application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). The Commissioner's finding of any fact is conclusive provided it is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401; Hancock, 667 F.3d at 472. Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock, 667 F.3d at 472 (citation omitted).

If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for that of the Commissioner, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g); Accordingly, "[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Wooldridge was born on March 7, 1951. R. 17, 137.[2] He was 57 years old at the time he alleges he became disabled on Jan. 1, 2009, and he is currently 62 years old, which places him in the category of an "individual with advanced age." R. 17, 25, 137. He is a high school graduate who worked for the Roanoke County School Board from 1975 to 2005 as a school bus mechanic. R. 141, 171, 175. Wooldridge then worked as a security guard from 2006 to 2009. R. 61.

Wooldridge alleges that he became disabled from all forms of substantial gainful employment on January 1, 2009, R. 25, and that his disability continues to this day. He claims that he suffers from depression and bipolar disorder. R. 167. Wooldridge states that his disability forced him to retire early from his position with the Roanoke County School Board. R. 32, 167. Specifically, he claims that his bipolar disorder caused his inter-personal relationships at work to deteriorate, and he alleges that the medicine he took for the bipolar disorder caused him to be drowsy and negatively affected his work productivity. R. 31-32. Wooldridge also alleges that his disability prohibits him from working as a security guard, as his medication causes him to be drowsy and renders him unable to remain awake during shifts. R. 167.

Wooldridge filed an application for DIB under Title II and Title XVIII of the Act on Oct. 2, 2009. R. 137. His claims were denied on both initial consideration and reconsideration. R. 78-82, 88-91. Thereafter, Wooldridge requested and received a hearing and review before an ALJ, which was held on Sept. 6, 2011. R. 22-52, 95-96. In an opinion dated Sept. 16, 2011, the ALJ denied Wooldridge's requests for benefits after determining that, although he suffered from the severe impairments of "bipolar disorder under good medical control, dysthymic disorder and attention deficit hyperactivity disorder," Wooldridge was not "under a disability." R. 13-18.

---

[2] Citations to the Certified Administrative Record, ECF No. 6, are designated by "R." throughout this Opinion.

3

Specifically, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity ("RFC"), there [were] jobs that exist[ed] in significant numbers in the national economy that the claimant [could] perform." R. 17. The Commissioner denied review of the ALJ's decision, R. 1-6, and Wooldridge now appeals.

### III.    DISCUSSION

Plaintiff's Motion for Summary Judgment argues that this Court should reverse the findings of the ALJ, as not supported by substantial evidence, because the ALJ improperly based his decision on the VE's answer to a hypothetical the ALJ posed at the hearing. Plaintiff claims that this was erroneous for two reasons. First, Plaintiff claims that the ALJ's hypothetical was unsupported by substantial evidence because it did not include the limitation, as reported by the consultative examiner, Dr. Gardner, that Wooldridge suffered from "marked impairment of concentration, persistence and pace." ECF No. 11 at 4. Second, Plaintiff argues that, even if the ALJ discredited Dr. Gardner's finding regarding Wooldridge's status, he should have included his own finding that Wooldridge suffered from a "moderate impairment of concentration, persistence and pace" in the hypothetical posed to the VE. Id. at 6.

After reviewing the record in this case, the Court finds that Plaintiff's arguments lack merit and that the Commissioner's final decision is supported by substantial evidence.

### A.    Social Security Disability Test

Wooldridge bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[3] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In this case, the ALJ found that, although Wooldridge met his burden in proving steps one and two, he failed to prove that he "had an impairment that meets or equals a condition contained within the Social Security Administration's official list of impairments," as required by step three. R. 13-14. The ALJ then found that Wooldridge was "unable to perform any past

---

[3] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

5

relevant work" as required by step four. R. 17. Thus, the burden shifted to the Commissioner to demonstrate that Wooldridge's impairment prevented him from performing alternative forms of substantial, gainful employment. See Taylor, 512 F.2d at 666. It is in this final portion of the ALJ's analysis where Wooldridge alleges error.

### B. The ALJ's Hypothetical and Subsequent Decision

In order to determine whether the Commissioner has met his burden in proving step five, ALJs often enlist the assistance of a VE. "The purpose of bringing in a [VE] is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). For the VE's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." Id. (internal citations omitted).

In his hypothetical to the VE, the ALJ posited:

> Now if you could assume a hypothetical individual of the claimant's age, education, and work experience. The individual doesn't have any documented exertional or postural, manipulative, et cetera, type of physical limitations. But let's assume that such an individual really is limited in terms of concentration, memory immediate recall such that [he is] really limited to one to, one to three-step tasks. Let's also say no strict production rate or pace work or anything with really strict production standards in case there's a tendency to kind of lose focus for, you know, brief periods of time. Let's also limit to no more than occasional interaction with the public, or co-workers, or supervisors. So [he] can have some interaction but generally should be able to have a task and do it with, you know a little bit of supervision.

R. 46. In response to this question, the VE testified that there existed jobs in both the national and regional economy—such as a laundry worker, cleaner II, and dishwasher—that satisfied this description. R. 47. Counsel for Wooldridge then asked the VE how the interpretation of Dr.

6

Gardner's finding that Wooldridge had a marked impairment in concentration, persistence, and pace would affect his response. R. 49. Although the VE responded that there existed several definitions for the term "marked" in various reports, he acknowledged that "[t]he standard definition used for Social Security . . . is serious limitation which results in substantial loss in . . . the ability to effectively function."[4] R. 49. He then concluded that "if a person has a marked impairment of concentration, and persistence, and pace based upon that definition," even unskilled work would be precluded. R. 49-50.

After this line of questioning, the ALJ confirmed that the VE had seen various definitions for "marked" in Social Security forms, and that Dr. Gardner did not report his findings in a form but instead in a narrative. R. 49–50. Additionally, at the close of the hearing, the ALJ directly addressed the meaning of the term "marked" by stating, "I guess I'm kind of limited to reading what the narrative says. But the marked impairment is what limits him to one to three step tasks." R. 50.

In his decision holding that Wooldridge was not under a disability as defined by the Act, the ALJ found that Wooldridge suffered from "moderate difficulties" in concentration, persistence, and pace. R. 15. To support his opinion, the ALJ relied upon the mental status exam performed by Dr. Gardner, an assessment of Wooldridge's file by Dr. Howard S. Leizer, Ph.D., and statements made by Wooldridge describing his disability.[5] R. 15. Explaining this finding, the

---

[4] As defined in the Act, a "marked" impairment means "more than moderate but less than extreme." 20 C.F.R. § 404 app. 1 (2012). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Id.

[5] There exists substantial evidence in the record to support the ALJ's finding that Wooldridge suffered from "moderate difficulties" in concentration, persistence, and pace. For instance, Dr. Leizer found that Wooldridge had "moderate difficulties" in concentration, persistence, and pace. R. 70. Additionally, Dr. Gardner indicated that Wooldridge "was able to perform work activities without special or additional supervision," and "was able to complete a normal workday or workweek without interruptions relating from his psychiatric condition." R. at 273, see infra Part III.C

ALJ concluded, "Although the claimant has a diminished ability to maintain concentration, persistence or pace, the record does not indicate a complete inability to work." R. 17.

### C. The ALJ's Hypothetical Fairly Conveyed Wooldridge's Impairments

In arguing that the ALJ's decision is not supported by substantial evidence, Wooldridge alleges that the above hypothetical did not fairly set out his impairments. Specifically, Wooldridge claims that the ALJ erred in crafting his hypothetical because it "did not include the 'marked impairment of concentration, persistence and pace' found by the psychologist, Dr. Gardner." ECF No. 11 at 4. Wooldridge's argument rests upon the notion that, because the ALJ indicated that he gave Dr. Gardner's diagnosis "significant weight," R.17, the ALJ was required to include the specific language used by Dr. Gardner when he conveyed Wooldridge's impairments to the VE. This position is incorrect.

Notably, Wooldridge cites no cases in his brief that indicate that the ALJ was required to use Dr. Gardner's exact language when the he posed his hypothetical to the VE. As the United States Court of Appeals for the Fourth Circuit noted in <u>Fisher v. Barnhart</u>, 181 F. App'x. 359, 364 (4th Cir. 2006), "the ALJ has some discretion to craft hypothetical questions to communicate to the [VE] what the claimant can and cannot do." In crafting his hypothetical to the VE, the ALJ was only required to fairly set out the claimant's impairments as they were supported by substantial evidence found in the <u>entirety</u> of the record. <u>See Walker</u>, 889 F.2d at 50. The ALJ was entitled to provide appropriate context to Dr. Gardner's statements in order to ensure that the VE received an accurate representation of Wooldridge's impairments. Thus, the ALJ's hypothetical is proper not if it contains the exact language of Dr. Gardner's assessment, but

rather if it communicates Wooldridge's abilities and limitations as they are supported by substantial evidence found in the record.[6] The ALJ's hypothetical meets these criteria.

The ALJ's hypothetical adequately communicated Wooldridge's impairments in regards to concentration, persistence, and pace. The ALJ accounted for Wooldridge's impairment in concentration when he instructed the VE to limit the hypothetical individual to one to three step tasks, and he accounted for Wooldridge's impairment in persistence and pace when he instructed the VE to exclude any "strict production rate or pace work or anything with really strict production standards."[7] R. at 46.

Importantly, the ALJ's characterization of Wooldridge's impairments is supported by substantial evidence found in the entirety of the record. For instance, Dr. Gardner wrote in his "Mental Source Statement" that "[t]he claimant is able to accept simple, one to three step instructions from supervisors given a marked impairment of immediate recall and moderate impairment of recent memory." R. 273. In his hypothetical, the ALJ mirrored this language by instructing the VE to assume an individual who "really [was] limited in terms of concentration, memory, immediate recall such that [he was] really limited to one to . . . three-step tasks." R. 46.

---

[6]  Wooldridge admits this point in his brief, stating that [a]n ALJ must propound hypothetical questions to the expert that are based upon consideration of all relevant evidence of record on the claimant's impairment and fairly set out the claimant's impairments." ECF No. 11 at 4 (emphasis added).

[7]  Wooldridge cites several cases, most notably Tune v. Astrue, 760 F. Supp. 2d 555 (E.D.N.C. 2011), to support his proposition that "restrictions to simple work are not inclusive of a medical restriction of even a moderate deficiency in concentration, persistence and pace." ECF No. 11 at 4. However, in the part of Tune that Wooldridge relies upon, the court notes that several jurisdictions have admonished ALJs who "present[ed] simplified mental RFC findings to the VE that did not encompass all of the findings made in the decision." Tune, 760 F. Supp. 2d at 563. This language indicates that ALJs should provide context to the VE in order to accurately convey a claimant's physical limitations, a practice followed by the ALJ in this case. Additionally, the ALJ did not limit Wooldridge's impairments in concentration, persistence, and pace to restrictions to simple work. Instead, the ALJ attempted to accurately describe Wooldridge's impairments by specifically describing the type of work, as well as production and pace standards, he believed Wooldridge could meet. For these reasons, this Court finds Wooldridge's reliance on Tune and other similar cases unpersuasive.

Moreover, the ALJ's hypothetical accurately conveyed Dr. Gardner's description of Wooldridge's limitation in concentration, persistence, and pace. While it is true that Dr. Gardner indicated that Wooldridge's "marked impairment of concentration would produce a marked work-related impairment of concentration, persistence or pace," R. 273, he qualified these remarks in subsequent sentences. In the very next sentences included in the "Mental Source Statement," Dr. Gardner indicated that Wooldridge "was able to perform work activities without special or additional supervision," and that he was "able to complete a normal workday or workweek without interruptions relating from his psychiatric condition." Id. These entries indicate that Dr. Gardner believed that Wooldridge was capable of working even in light of his impairment of concentration, persistence, or pace, a sentiment that was expressed by the ALJ in his instruction to the VE to include "no strict production rate or pace work or anything with really strict production standards in case there's a tendency to kind of lose focus for, you know, brief periods of time." R. 46.

By considering the entirety of Dr. Gardner's "Mental Source Statement" and not relying exclusively on the use of the term "marked" regarding Wooldridge's impairment of concentration, persistence, or pace, the ALJ was able to accurately convey Wooldridge's impairments to the VE. For these reasons, the ALJ's hypothetical was properly posed, and Wooldridge's argument that the ALJ's decision was not supported by substantial evidence is incorrect.[8]

_____

[8] At argument, Wooldridge claimed the recent case of Hopson v. Astrue, 7:11-cv-00383, 2012 WL 1108719 (W.D. Va. Mar. 30, 2012) necessitates this Court to find for the claimant. The Defendant then filed a supplemental brief on this issue. ECF No. 19. This Court agrees with the Defendant's assessment that Hopson is factually distinguishable from the instant case. In Hopson, the court ruled that the ALJ's decision was not supported by substantial evidence because the ALJ's hypothetical did not incorporate any reference to the examining psychologist's finding that the "plaintiff's ability to concentrate, and her capacity to work on a persistent basis, would be markedly affected by her emotional dysfunction." Hopson, 2012 WL 1108719, at *4. However, as discussed above, the ALJ in this case

**D. The ALJ's Finding that Wooldridge Suffered from a Moderate Impairment of Concentration, Persistence, and Pace Is Adequately Conveyed in the Hypothetical**

As part of Step 3 of the Social Security disability test, the ALJ found that the claimant had "moderate difficulties" in regard to concentration, persistence, or pace. R. 15. Wooldridge argues that, even if the ALJ chose to discredit Dr. Gardener's findings regarding Wooldridge's limitations in concentration, persistence, or pace, he should have included his own findings of "moderate impairment" in the hypothetical he posed to the VE. ECF No. 11 at 6. This argument is unpersuasive. Wooldridge cites no authority that stands for the proposition that an ALJ must use the exact language from his Step 3 finding in a hypothetical posed to a VE. The case Wooldridge relies upon in his brief, Enos v. Comm'r of Soc. Sec., No. 0:10-cv-02179, 2012 WL 590040 (D.S.C. Feb. 23, 2012), simply states that if an ALJ makes such a finding, he is required to "adequately convey that limitation to the VE." Id. at *6. In the instant case, the ALJ satisfied this requirement.

Impairments described as "moderate" are less severe than those listed as "marked." 20 C.F.R. § 404 app. 1 (2012). The Act defines a marked limitation as one that "interfere[s] seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Id. Therefore, a hypothetical reflecting a claimant's moderate impairment in concentration, persistence, and pace is one which takes into account that claimant's impairment but still recognizes the claimant's ability to function in a diminished capacity. As discussed in Sections III.B–C., supra, this is precisely the type of hypothetical that the ALJ posed to the VE. Because the ALJ adequately conveyed a limitation of moderate impairment to the VE, his hypothetical was proper.

---

incorporated Dr. Gardner's findings as they were described in the entirety of his "Mental Source Statement." Hopson is therefore distinguishable and does not control the outcome in this case.

## IV.    CONCLUSION

After review of the record, this Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, this Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 15, and **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 10. An appropriate order shall issue this day.

**ENTER**: This _11th_ day of December, 2013.

James C. Turk
Senior United States District Judge